Marks the third case on the morning call, 219-0171 Village of Buffalo Grove v. Board of Trustees of the Buffalo Grove Firefighters' Pension Fund and Kim Hallward On behalf of the Village, Mr. William H. Nichols On behalf of the Trustees of the Firefighters' Pension Fund Ms. Carolyn W. Clifford On behalf of Kim Hallward, Mr. Tom Student Mr. Nichols Good morning, Your Honors May it please the Court I'm representing the Village of Buffalo Grove in this matter as intervenors in the Pension Board hearing and decision below The decision was, we're challenging the decision of the Pension Board to award a 100% of salary line of duty disability pension to Ms. Kim Hallward, the surviving spouse of Firefighter Kevin Hallward who provided 23 years of honorable service to the Village of Buffalo Grove Fire Department What's our standard of honor? We think the standard is the clearly erroneous standard But frankly, we think we're entitled to prevail under any applicable standard Are issues of causation generally manifestly? Yes, they are, Your Honor But this is very different from a typical, say, tort-approximate cause case where the plaintiff or the activist is trying to show a link between certain factual events and the unfortunate outcome And in this case, the Village is not challenging the facts found We're saying that the Pension Board, in fact, interpreted the statute in a way that minimized or reduced the factual findings necessary to award a pension The task that we have is to determine whether or not there's any evidence in the record that supports the grant of duty benefits. Do you agree? That's part of the task Well, part of our task. That is our task Well, we think this case fundamentally rests on the question of statutory interpretation Let me ask you this also Which would be a de novo review? Yes, but it's... I'd love it if you gave it a de novo review But there are questions of... There are questions of law Of fact and law, right, mixed together Now, the Village did not object to the introduction of the medical literature, correct? Correct And that argument's forfeited on appeal. Would you agree? Yes, I would So we cannot really reverse on the basis that the Board considered medical literature because there was no objection to it, correct? Correct So how is that medical literature at odds with your argument that there was no evidence in the record to find the duty benefits? If you look at the medical literature and the record the question is whether that medical literature establishes a causal connection between specific events that occurred to Firefighter Hobart during the course of his firefighting service and his resulting colon cancer And there's nothing in the record that links the two How about the 137 calls, or 127 calls? Those are, in our view, cursory explanations of what went on the kinds of fires that they responded to, that his entire squad responded to But there's no direct evidence of exactly what Firefighter Hobart experienced and whether he had any actual exposure to any carcinogens, toxic smoke, and so forth during the course of those calls and that kind of specific evidence of exposure that could then be linked to his cancer is what we think the statute requires for a line of duty Would you require that? Would you require an applicant for a line of duty pension to come in with evidence of each fire that that person went to fight and what was burning and what carcinogens may have been present? Because your argument in general seems to me to be that if a person comes down with cancer after serving for a number of years as a firefighter they could really never prove line of duty They would always have a decent shot at occupational, but they could never prove line of duty It would be very difficult There may be a rare case where they could prove it But you're exactly right, Your Honor And that is why we believe that because of the difficulties of proof the legislature adopted the Occupational Disease Disability Pension Statute and that where a firefighter cannot prove specific causation then the Occupational Disease Disability Statute is their resort That's the way the legislature set up the pension code  specifically where he certified that Hauber's cancer was a type of cancer which may be caused by exposure to heat radiation or known carcinogen and where he went on to say that the cancer manifested itself while he was in the service of the fire department and arose from his service The standards that those IME physicians were asked to address is whether an occupational disease disability pension had been proven and their opinions really do not relate to specific events that firefighter Hauber went through They are really speculative based on medical literature not on the specific career history of Mr. Hauber That opinion by Dr. Samuel just basically regurgitates what's in the statute, correct? Correct That it was a type of cancer under the Occupational Disease Disability Pension The only way he goes beyond that is to say there's an association based on the medical literature between the kinds of cancer and the kinds of activities in the fire department But he correlates those He looks at the Occupational Disease Statute He adopts that language, puts it in his opinion and then says there is a correlation, there are Right In the medical literature And also the history, correct? The medical history of Kevin Hauber that there was no history in his family of colon cancer and there was some genetic testing that was done although not complete Correct, not complete But there were some numbers that indicated that it was hereditary or associated with It's made it unlikely that it would be hereditary Doesn't that lend support to the argument that he's shown that it was caused by exposure? There's So how far does an applicant have to go to show a duty benefit for cancer? In every other case reported for line of duty disabilities where they've been awarded the applicant had to show a tie of their unhealthy result to particular acts of duty particular events that occurred during the course of their firefighting career And as sad and unfortunate as the situation is there's a recognition by the legislature and in the medical community that it's very difficult to establish specific proof of cancerous conditions or what may be triggered a heart attack or a lung condition or so forth And as a result our legislature and the legislatures of 20 some odd other states have adopted these occupational disease disability statutes which say cancer or other disease that typically takes a long time to develop and may not have any one provable point of origin but depends on or develops through repeated exposure to unhealthy conditions like firefighter may encounter Is your position reading the language out of the line of duty pension statute where it talks about cumulative effects? Because how, again, how would you show cumulative effects? Your argument almost reads that out of the statute I don't believe it does because what it requires is then evidence of exposure the resulting impact of that exposure on the firefighter that's the cumulative effects and then the causative link medically to the resulting cancer The 137 calls would be evidence of exposure, would it not? We don't believe so, Your Honor And then the link would be the medical testimony of the IMEs Would that not be? Well, we encourage you to read and focus on those IME reports and decide whether, because we don't think they do whether they meet the statutory standard of tying specific events specific disabling events that occurred during firefighter Haber's career if any can be shown But is that our job at this point? I mean, can you cite to me any cases where the appellate court has reversed the pension board on a finding for a disability other than one where I think I wrote it where you had three IMEs finding him disabled and the board went the other way I mean, other than that, that I know of Can you cite me any where we reversed? That's the only one I'm aware of, Your Honor But the analysis is the same either way Well, how about this, the Village of Oak Park case, the hearing loss Why is hearing loss any different than cancer? Well, we all know that on the job some firefighters who are exposed to sirens, loud noise throughout their career will suffer and may suffer hearing loss and others who are in the same vicinity do not suffer hearing loss We also know that just in the general population that people who are exposed to certain substances, toxic substances develop cancers, various types of cancer, and some do not So why is hearing loss different than cancer? The Oak Park case, doesn't it present a challenge to your argument? No, I think the Oak Park case is in line with the other cases which found that specific acts of duty contributed cumulatively to an additional hearing loss It was not just one exposure to loud noise, it was multiple over time There was evidence in the record that he testified that every single shift he sat in the cab of the firetruck throughout his career and that he had a hearing test when he started firefighter service and one 11 years later and that there was evidence in the interim of noise-induced additional hearing loss He did have congenital hearing loss and there was evidence of decibel readings of how loud the noise was in the cab of the firetruck In this case, there's evidence in the record of 127 fire calls We have evidence that Firefighter Hobart participated in 127 fire calls most of which involved, you know, the fire was out at the time or it was a stove fire or a brush fire or things like that I think there was one where there was a garbage can, a plastic garbage can and another case where there was fuel that was burning But we don't know what Firefighter Hobart's actual role was Well, we know that there was exposure Well, we know that he was always following the safety protocols and wearing his suit and his safety equipment We know that he never asserted any complaint about exposure that bothered him from any of the calls And we know that in other instances where he had a pinprick or was spit on or coughed on by fire victims or other victims that he did report that because he was concerned for his health and safety There's no evidence that he claimed that he had any particular exposure on any of these calls Now, you argue that it was error for the board to moot Kevin's applications Can you address that? That it was error for the board to moot Kevin's applications that were pending at the time of his death? It was within their discretion to do so The question is whether they were clearly erroneous in doing so And their argument is that they didn't have to that they could moot the occupational disease disability application of Kevin because it had no impact on the outcome of the case And we think it does have an impact and should have been considered because not only does it provide a pre-death benefit to Kevin but it also mandates what the surviving spouse pension ought to be He was already receiving a disability, correct? You said there was a pre-death benefit He wouldn't get a pre-death benefit He was already receiving a short-term disability or some type of payment, correct? There's no evidence in the record that he was receiving anything after he went off payroll in the summer of 2017 until he died in January of 2018 So he could conceivably, and the board found he was eligible for it in the alternative He could conceivably receive occupational disease disability pension benefits for that period of time and then his spouse could continue at that same 75% level for the rest of her life But prior to his death, there was not an IME No, but the board acted, conducted itself as though it was going to resolve and consider his occupational disease disability pension because they learned from his counsel in August of 2017 that he was in hospice, he was expected to have two weeks to live They conducted a hearing at that time to take his testimony and at that, but in taking his testimony they did not explore any of the line of duty standards just the occupational disease standards and they solicited then the three IME reports at that time knowing full well that they weren't going to get those reports back within the next two weeks So the board was figuring, implicitly that it would still consider the occupational disease disability pension statute after he was expected to die But the statute says if the firefighter dies while still disabled and receiving disability pensions He wasn't receiving it He was not receiving it simply because of the vicissitudes of timing Right The board could not complete consideration of his occupational disease application before he died because it took a while to get the IME reports in But should a firefighter who's entitled to the occupational disease disability pension be precluded, and his family be precluded from receiving that benefit simply because of the fact that he happens to die before the pension board can conclude its examination Your time is up You'll have time for rebuttal You can wrap up if you have anything  I would just urge the court to consider that despite all the evidence in the record none of that evidence shows a causal link between specific acts of duty and Kevin Harbour's resulting cancer And we think the line-of-duty disability statute clearly requires that The occupational disease disability statute is ready-made for these kinds of cases Fits the facts and the evidence perfectly and was unfortunately not applied by the board and we're concerned that the board's interpretation of the cumulative effects of acts of duty language they're applying it the same as the resulting from service as a firefighter language in the occupational disease disability statute and the two are clearly distinct and different as case laws recognize You're conceding that the occupational duty was met the burden was met on occupational duty Yes Thank you very much You'll have time for rebuttal Thank you Ms. Clifford May it please the court My name is Carolyn Wells Clifford and I am the attorney for the board trustees of the Buffalo Grove Firefighters Pension Fund The appellees have divided the argument today for presentation to you I'm going to start with the first two arguments made by the village and explain the applicable review standard review that applies to the board's decision as well as the evidence that supported the board's decision My co-appellant, appellee, Thomas Ditto will address the last two arguments which address the issue of the proper statutory language underlying the duty of death, surviving spouse benefits and that the board properly declare the occupational disease application moot I'd first like to just take a couple of minutes to note some things that came up in the appellant's argument I think your court's, your arguments or your questions were spot on and in particular I feel like the statement or the question that what the village is trying to do is read cumulative effects of acts of duty out of the statute is spot on because I think that's exactly what they're trying to do with the arguments they're making before this court I think the other thing I wanted to note is there is a distinction whenever you have a disability matter the board is under an obligation to obtain three independent medically evaluated physicians they provide us medical opinion in regards to the disability the nature of the disability and what they believe the cause is but it's the board's obligation then to make the legal determination as to how those opinions fit under the statute and whether that means that our applicant has met the statutory burden and sometimes I think the village's arguments they're starting to mix the two in terms of particularly the information we receive from our IME physicians in regards to occupational disease statute type of issues and how then the board ultimately use that information to help it resolve the line of duty death, survivor benefits Well the board did not specifically rule on the occupational disease because there was only a line of duty, correct? That's correct We did make alternate findings in the event that the court would want to reverse us on that issue Well where is that in the... In the findings? Yeah, that language It's near the end Under the legal conclusions we have a series of statements near the end they're about the 120, 125 mark where we walk ourselves through the various provisions of the statute For an occupational disease statute had Kevin Halbert lived he would have met the requirements to obtain occupational disease disability But because he declared it moved because he had passed away we turned our attention then to the language under the line of duty survivor spouse benefit and determined that Kim Halbert met those standards that she approved the cumulative effects of acts of duty caused Kevin's Halbert's death Your opponent says and he points out that you that the board improperly conflated the statutory standards for occupational disease pension and duty pension How is that not detrimental to the board's finding? So I think that it's not true that we didn't conflate what actually happened was we made alternate findings because we started this process as an occupational disease benefit but when he passed away and we shifted to the line of duty death application that was before us the board was advised in the hearing process specifically of the standards that they were to take into consideration what the statute provided was the burden of proof on Kim which is to prove the acts of duty or the cumulative effects of acts of duty caused his cancer We made the alternate findings only because the information had been provided to us through the beginning of that process How about the medical the IMEs tended to conflate or were looking at different standards for occupational disease versus the duty pensions And that's why I was trying to explain that there's a difference between the medical opinions and then the legal determinations by the board We ask questions to our physicians in the words that are used in the statute but we're not asking our IME physicians to make a legal opinion we're asking them to provide us a medical opinion and asking them to provide that medical opinion we use the words from the statute so that they help us dovetail the two pieces of information the medical opinion and how it overlays then with the statutory obligations that need to be met by the applicant But you're relying on their IMEs We are And in the IMEs they relied on medical literature that otherwise ordinarily would be hearsay That's correct And you agree and acknowledge that had there been a timely objection we would have ruled that that was hearsay, correct? Possibly Or we would have brought the doctors in to testify Right and build a foundation for Right, but largely the board relied on hearsay The board relied on the medical opinions that then read the medical literature to inform their medical opinion And so that's how It's different when you have an expert on the stand and you correlate what the expert's saying to the facts and circumstances of this case Here that's not what you have You have a complaint of cancer and then medical literature Right Firefighter, cancer, literature That's basically what you have Right, and of course we also subpoenaed and received all the fire call history Right, right And what I think was so important to point out about that as well is while the village takes issue that we don't spend a lot of time poring over those accounts the information we receive in regards to those exposures are limited because the MNIFRS reports we receive from the village that document fire calls often don't have a lot of detail about exactly what was going on with those fires I think the Buffalo Grove Fire Union's brief was spot on important on this issue that probably the five biggest fires that Kevin responded to in his career were actual responses to mutual aid in regards to probably some of the biggest fires in other communities where multiple departments were responding and when you look at those MNIFRS details there's maybe one or two lines The full details would have been in other reports generated by those agencies But Kevin was on those scenes of some very, very large fires We just don't have the detail in our record as to what the nature of those fires were That's interesting to me Absolutely But I mean that lack of a record doesn't that inure to the benefit of the village as opposed to the board? I don't believe so We work with the information that we have the information that we're able to obtain from the village and their information is not going to have the detail that would presumably mean what the village thinks should be met in having detail as to exactly what was burning in a fire what the particular particles they were exposed to who exactly was exposed where and for what length of period Those things aren't being documented Right, but here we have IMEs at least the two operative ones that we're looking at only refer to service as a firefighter Really don't get any acts of duty Service as a firefighter which of course is the occupational disease disability Then you have this you know fairly limited fire call history evidence So the question is whether or not the board's decision is against the benefits of the evidence when there's nothing specifically honing in on acts of duty Well, I think that it is completely reasonable and the board did rely upon the fact that not only can you look to the literature that has studied what burns at fires and what firefighters are exposed to to determine what we can have assumed Kevin was being exposed to and I don't think that that is an unreasonable reliance to have particularly when members of the board are firefighters too and they know exactly the conditions under which they're responding and everyone in these fires anything that's burning is going to be toxic and they understand that and I think it was reasonable for the board to rely upon that Let me ask you this On August 5th of 2017 Kevin applied for a line of duty application for his back injury Correct And at the same time he applied for an occupational disease pension under the occupational disease statute due to a tumor found in June of 2017 so he believed he believed just prior to his death that he was entitled to an occupational disease benefit because he was familiar with the statute he had applied for benefits in the past and he believed he met the definition of occupational disease and you don't contest that he absolutely did correct? Right And the board so found Correct Correct Thank you Well let me ask you I don't know if this goes into yours or into your co-counsel's but I asked the opposing counsel based upon his argument it seemed like someone with an illness like cancer could never get a line of duty disability Right I'm asking you though based upon this record could every firefighter who you know tragically comes down with colon cancer get a line of duty? No In fact I think one of the operative facts that you asked about it if we had learned from the genetic testing that he indeed had a genetic component to the type of cancer he had I think we would have found that our IV physicians would have rendered different opinions and the board would have rendered a different result The screen in this case was not complete correct? It was a Correct How complete was it? Half? A third? You know the IV physicians well Dr. Samo and Dr. James took it as enough to rule out genetics as the cause of his colon cancer Thank you Thank you Mr. Duda Good morning your honors Thomas Duda on behalf of Kim Culver May it please the court May it please counsel I'm here to address the application that the widow made to the pension fund    the outcome of the case The applicant at the time of the application was a woman who was in a very difficult position in her life and at the time she applied was a widow Kevin had already passed away and the statute that I'm going to talk about 110.1 and 114    if the decedent was receiving an occupational disease disability benefit and if the recipient was receiving a occupational disease disability benefit at the time that she applied for a enhanced survivor benefit and it's undisputed that he wasn't therefore he wasn't he wasn't receiving an occupational disease benefit he had died before that occurred so the focus of this case shouldn't be on the pension funds discretion and whether or not the decedent's rights should have been pursued the question is the widow's rights and her rights are determined by the actual conditions on the date that she applied for benefits but there was an application for occupational disease benefit and had that been granted had he had Mr. DeSantis granted that I was going to discuss that with the court next so the issue of the discretion that was exercised by the board in order to pursue the decedent's application I think is a non-event if the court disagrees with me the standard of proof as to the choice of how to proceed with the application would be clearly erroneous standard but it's important I really want to distinguish this causation is not part of this equation causation is an  that by applying a standard I believe that the choice that the pension fund made was not contrary to the statute was not contrary to an abuse of discretion and this court in  case I think this is on the same level but be that as it may even if the firefighter had completed his application it is not true that that the benefit that she would be entitled to would be the 75% provided under 4-110.1 because 4-110.1 reads if a firefighter dies while still disabled and receiving a disability pension which means it's not applicable under this section the disability pension shall continue to be paid to the survivors in the sequence provided in 4-114. So it is the interpretation that the plaintiff has placed on this provision is that the benefit under occupational disease continues to be paid to the survivors in the sequence provided under 4-114.1    interpretation   has placed on this has placed on this case. The decibel levels provided were by the village that showed that his hearing loss wasn't related to work. And Dr. Samo, who's the expert in this case, gave an opinion that the hearing loss was not caused by work. It was genetic. These are individual cases, which is why there's not going to be a benefit  4-114.1. I think I've read in a lot of the amicus briefs it's like urging us you're going to open flood gates and every firefighter who comes down with cancer is going to get benefits. How would you refute that? These are case-by-case decisions. If certain facts had been present in this case, the  would have had ten years of service if he had a strong family history of cancer. I'll end with this. The job description, I think it's in a record page 72, the job description of the village itself that was written long before Kevin Hauber was diagnosed with colon cancer states that part of the duties, the job description was to record carcinogenic materials. So the fact that the village doesn't record on their reports what chemicals were detected and they probably don't even test for what chemicals are detected, they know there are chemicals that are detected and for the board to draw the inference that the job description combined with the run history of the deceit to infer that there was carcinogenic exposure, I think is clearly within the manifest suite of the evidence. I apologize for going over it. But does that then run into this conflation with the presumption again? No. The board made alternative findings in the event that we were to reverse the test. They didn't have a test because no tests were done. But when you consider the magnitude of the evidence, the admission and the job description itself, I mean, the village must know what they're talking about. Why would you put that in your job description if you weren't aware that there were carcinogenic materials at structural fires? And there's a ton of research on it. It's in the studies that the experts relied upon. So it is not true that this was not individualized consideration. It was individualized consideration. It has no effect beyond that of my client, Kim Halver. Thank you. Thank you, Dr. Thank you. Mr. Nichols, rebuttal. Thank you, Your Honors. I've identified about six points that I'd like to respond to. I don't know if I can do so in five minutes. And if you have further questions, feel free to raise them with me. Talk quickly. I'll keep them quiet. This is a highly sympathetic case, and it's very difficult to apply a statute objectively, I guess, in situations like this. But it's clear that we have two distinct statutes with very different standards, very different burdens of proof required. The Rakosik case under Article 6, which is analogous, makes the distinction. It says firefighters that were awarded occupational disability pensions after they die, their widows know are not eligible for pensions. No additional proof, the whole case that the pension board built was based on an occupational disability application. No additional evidence was solicited or obtained or, in the record, subsequent to the widow filing her line of duty disability pension. So all the evidence that they're relying on are IME reports and fact findings about the fact that he started as a firefighter healthy, ended as a firefighter unwell. Well, let's talk about his health briefly. He was 51 years old when he passed, correct? He was otherwise in good health. He was not a drinker, correct? No genetic predisposition found, correct? Likely not found, yeah. None was found. None was found. He was exposed to fires. He attended fire calls. We don't know the level of exposure. The village's own job description, he was exposed to toxic substances during the course of his work as a firefighter, carcinogenic substances, correct? Right. Is that job description proof of exposure? No. There are cases out there that say, the Linda Mulder case, which you're familiar with, Your Honor, and the Covella case both say inherent risks, knowledge of inherent risks of firefighting is not proof of exposure. It's not enough. The legislative findings under the Occupational Disease Disability statute clearly recognize the inherent risks of firefighting and establish a lower level of proof as a result. But the fact, you still have to prove something more than those inherent risks, and in both those two cases, the court said, no, pointing out the inherent risks of the smokescreen or the inherent risks of potential exposure are not enough. You have to prove actual exposure. But it says, or is caused or affected by the effects of acts of duty. Right. But that still requires proof that there was some level of causation tied to specific events or occurrences during his career. In fact, the Pension Board counsel sent a memo or delivered a memo to the Pension Board prior to it making its decision. Her memorandum is in the record. And she even said, the standard for a line of duty disability pension is identification of specific disabling events, those are her words, that have to be shown to be on duty and causative of the resulting ill health. But what case says, what case tells us that you have to point to one or more specific acts of duty that caused or contributed to this? All the cases, Your Honor, where a line of duty disability was found, including Oak Park, identified particular acts of duty. The Oak Park case goes the farthest in terms of saying, yes, there were acts of duty, riding in the cab of the fire truck each shift to go to fire calls. They didn't identify what particular act of duty triggered his additional hearing loss, but there was evidence that he actually was exposed to that noise level, and that over time the hearing tests established that he had noise-induced hearing loss. There's none of that sort of evidence tying any particular thing that Kevin Hauber went through to any particular physical effects that he had that could have caused his medical condition. You know, sitting on the board, the board's listening to reviewing all of the evidence, and, you know, we have the occupational disease definition, which says as a matter of law, because the general assembly passed it, that firefighters are exposed during the course of their work to carcinogenic substances, correct? That is an expectation if you go into firefighting, but the line-of-duty disability statute still requires proof that you actually were exposed. And in this case, we have proof in the record that he was exposed to smoke and other chemicals during the course of his career, at least in some of those cases. And the general  does not require proof that  exposed during the course of his career. And the general assembly does not require proof that he was exposed during the course of his career. Okay. No. But I do think, however, that Mr. Duda is taking a literal reading of the statutes and not reading them consistent with their purposes, and that the unfortunate timing of the death of a particular firefighter should not preclude him and his family from enjoying the benefits that they were entitled to. The language in the occupational disease statute about referring to the sequence of 114 is not meant to completely nullify the mandate in surviving spouse pension that's specified above that for occupational disease cases, nor is the notwithstanding language at the end of 114I intended to nullify all the line of duty and occupational disease disability pensions that are available under the article. That's an argument that should be made to the General Assembly, not this Court. We don't make policy. The General Assembly does. The notwithstanding language with the reference to section D above. Notwithstanding any other provision of this article. Right. Because it follows a reference to the amount of benefits to be awarded in the line of duty and refers to D above which provides for lesser benefits under certain circumstances and the rest of the article contains other pension provisions providing different amounts of benefits. But we don't think that should nullify all the benefits that are provided under the entire statute. Your Honor. Thank you. Thank you. All right. The Court thanks both parties for the qualities, all the parties for the quality of your arguments today. Very interesting issues. The case will be taken under advisement and the written decision will be issued in due course. The Court stands adjourned. Thank you.